# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMSC-017

Filing Date: April 12, 2021

No. S-1-SC-37978

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROBERT CHAVEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Released for Publication May 25, 2021.

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellant Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Charles J. Gutierrez, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**BACON, Justice.**

## I.      INTRODUCTION

**{1}**     In 2011, Richard Valdez (Victim) died after Defendant Robert Chavez and his coconspirators beat and shot him. Later they burned Victim's body in a 2006 Suzuki station wagon. After a joint trial, Defendant was convicted of first-degree murder, conspiracy to commit first-degree murder, arson, and tampering with evidence due to his involvement in the murder of Victim. Defendant now appeals, arguing that (1) the trial court erred when it failed to sever the joint trial, (2) his convictions violate principles

of double jeopardy, and (3) there was insufficient evidence to support his arson conviction. He asks this Court to reverse his convictions. We affirm.

## II.    BACKGROUND

**{2}**    Defendant's case was joined with that of coconspirator, Matias Loza under Rule 5-203(B) NMRA. Defendant consistently opposed the joinder to Loza but never argued for severance. Only Loza submitted a motion for severance and argued at the hearing on joinder and severance before the court that a joint trial would prejudice him due to "unfavorable" defenses, in part because Defendant planned to testify but Loza did not. Loza's motion to sever notes that Defendant "would stipulate" to the motion, but Defendant did not join Loza in the motion. At the hearing before trial, Defendant made no comment on the issue of severance nor indicated why he did not join Loza's motion to sever the joint trial. Then, in a response to Loza's motion to sever filed after the hearing, Defendant only reiterated his opposition to the joinder.

**{3}**    The trial court denied Loza's motion to sever and proceeded to trial.

**{4}**    At the joint trial, the jury heard extensive evidence incriminating Defendant, including testimony from his nephew, Joey Chavez (Joey), who participated in the murder, and Tracy Garrison (Tracy), who was Joe Chavez's (Joe) girlfriend at the time of the murder. Joe is Defendant's brother, the father of Joey, and the father of Victim's girlfriend, Priscilla Chavez (Priscilla). The jury also heard from other witnesses including law enforcement officers, crime scene and forensic experts, and Loza's cellmate.

**{5}**    The jury heard from Joey how Loza and Victim got into a fight on the evening of October 30, 2011, at Applebee's. Later, Defendant, Loza, and others drove around looking for Victim as they talked about killing him, a conversation which Loza recorded on his cell phone. In the recording, Defendant can be heard saying, "It's my turn, now. I get to pop him in the face. I know you like to hit him in the head, I like to hit him in the face, right in the . . . forehead." The others also talked about how best to kill Victim. They returned to Defendant's house at around 5:00 or 6:00 a.m. on October 31 and slept. Joey testified that Defendant woke him up around noon, saying that Victim was on his way to Defendant's house and Joey should "get ready."

**{6}**    Joey's testimony at trial revealed that Defendant, Loza, and others agreed to kill Victim. They planned for Victim to come to Defendant's house, to kidnap Victim, and then to kill him somewhere away from the house. Defendant specifically told Joey, Loza, and Joe not to "pop" Victim in the house. They had shackles to kidnap Victim, and Defendant gave Joey a flashlight to hit Victim if he tried to fight. Defendant also had a gun.

**{7}**    Joey testified that after he woke up around noon on October 31, Victim arrived at Defendant's house, walked into the kitchen, and tried to apologize to Defendant for the fight the night before. Defendant, Loza, and Joey attacked Victim who tried to escape through the front door, which was locked. Defendant helped keep Victim from escaping by pulling him back into the house. Defendant, Joey, and Loza beat Victim, and

Defendant hit Victim with Defendant's gun. Finally, while standing in the living room, Loza shot Victim in the head. Initially, Defendant directed everyone to leave Victim's body on the floor. Eventually, however, the coconspirators decided to "clean up" Victim's body by moving it and burning it in Priscilla's Suzuki. After driving a few miles away, Defendant handed Joey the matches to burn the Suzuki and Victim's body. Joey lit the vehicle on fire and left the scene with Defendant.

{8}     After the State rested its case, Loza pleaded guilty. Loza did not testify at the trial. On the next day of trial after Loza pleaded guilty, Defendant testified in his own defense. Defendant claimed he was not present at the time of the murder.

{9}     Defendant was convicted on all four counts.

## III.   DISCUSSION

### A.    In a Joint Trial, Each Defendant Must Individually Preserve the Issue of Severance

{10}     Defendant argues for the first time on appeal that his joint trial with Loza should have been severed. He contends that the joint trial resulted in severe prejudice to him. Before we consider whether the trial court erred in deciding not to sever the joint trial, we first consider whether Defendant properly preserved his claim for severance.

### 1.    Severance requires prejudice

{11}     Severance allows a court to separate proceedings that involve joint offenses or joint defendants. Rule 5-203(C). In order to sever a case, there must first be a joinder under Rule 5-203(A) (joinder of offenses) or (B) (joinder of defendants). *State v. Gallegos*, 2007-NMSC-007, ¶ 16, 141 N.M. 185, 152 P.3d 828; *State v. Paiz*, 2011-NMSC-008, ¶ 18, 149 N.M. 412, 249 P.3d 1235. If there is joinder, and "[i]f it appears that a defendant or the state is prejudiced" by the joinder, then "the court may order separate trials of offenses, grant a severance of defendants, or provide whatever other relief justice requires." Rule 5-203(C).

{12}     "A defendant 'is prejudiced' in this context if there is an appreciable risk that reversal will be warranted because of a later determination of *actual* prejudice." *Gallegos*, 2007-NMSC-007, ¶ 19 (quoting Rule 5-203(C)); *see also State v. Montoya*, 1992-NMCA-067, ¶ 11, 114 N.M. 221, 836 P.2d 667 (determining that an appellate court must decide whether "there is an appreciable risk that the jury convicted for illegitimate reasons" by considering the degree of prejudice a joint trial causes and the strength of legitimate evidence against the defendant). Actual prejudice that might warrant severance includes when codefendants have contradictory, irreconcilable defenses, which could result in a jury "unjustifiably infer[ring] that this conflict alone demonstrates" guilt or when evidence is included in a joint trial when it would not be cross-admissible in separate trials. *See State v. Segotta*, 1983-NMCA-054, ¶¶ 30, 32, 100 N.M. 18, 665 P.2d 280 (internal quotation marks and citation omitted), *rev'd on other grounds*, 1983-NMSC-092, ¶ 1, 100 N.M. 498, 672 P.2d 1129; *Gallegos*, 2007-NMSC-007, ¶ 19 (noting the possibility of prejudice if evidence would not have been

cross-admissible in a separate trial). A defendant has the burden to establish prejudice. *State v. Garcia*, 2011-NMSC-003, ¶ 20, 149 N.M. 185, 246 P.3d 1057.

**{13}** We review a trial court's denial of a motion to sever for an abuse of discretion. *Id.* ¶ 16. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Apodaca*, 1994-NMSC-121, ¶ 23, 118 N.M. 762, 887 P.2d 756 (internal quotation marks omitted) (quoting *State v. Simonson*, 1983-NMSC-075, ¶ 22, 100 N.M. 297, 669 P.2d 1092). A trial court abuses its discretion if, at the time of the motion to sever, "there is an appreciable risk that reversal will be warranted because of a later determination of *actual* prejudice." *Gallegos*, 2007-NMSC-007, ¶ 19.

**{14}** Even if we conclude that a trial court abused its discretion when it decided not to sever, where an error is preserved, we review for harmless error. *See State v. Lovett*, 2012-NMSC-036, ¶¶ 52-53, 286 P.3d 265 ("In the context of failure to sever, we have sometimes called the harmless-error analysis a question of actual prejudice to the accused."). We "will not reverse unless the error actually prejudiced the defendant." *Gallegos*, 2007-NMSC-007, ¶ 18. "[A]ny error by the trial judge is harmless if it did not actually prejudice the defendant." *Garcia*, 2011-NMSC-003, ¶ 19. However, when an argument is unpreserved, an appellate court will review only for fundamental error. *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633.

## 2. Preserving severance

**{15}** To claim on appeal that a defendant was prejudiced by the trial court's failure to sever a joined trial, a defendant must have preserved the claim for severance by invoking "a ruling or decision by the trial court." Rule 12-321 NMRA. Defendant contends that New Mexico's preservation rules only require a party to invoke a trial court's ruling or decision. Defendant argues that he successfully preserved the issue of severance because the trial court denied Loza's motion to sever. This is incorrect.

**{16}** "To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked . . . [by an] object[tion] to a ruling or order at the time it is made." Rule 12-321. "*The party claiming error* must have raised the issue below clearly and have invoked a ruling by the court . . . ." *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 12, 125 N.M. 748, 965 P.2d 332 (emphasis added) (citations omitted). In order to invoke a ruling, a party must assert a legal principle and develop the facts to support the issue. *State v. Adame*, 2020-NMSC-015, ¶ 13, 476 P.3d 872. "In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors . . . ." *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted).

**{17}** The issue of prejudice is inherent in a claim for severance. Rule 5-203(C). In a joint trial, each codefendant who claims that the trial court erred by failing to sever must individually preserve the claim for severance. *See State v. Pacheco*, 1990-NMCA-071, ¶¶ 22-23, 110 N.M. 599, 798 P.2d 200 (considering only one codefendant's claim for

severance when the other codefendant did not object to the joint trial) *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110; *State v. Schuler*, 774 N.W.2d 294, 297 n.2 (Iowa 2009) (holding that when a codefendant did not join his defendants in a motion to sever, he failed to preserve the error for appeal on the issue). In so doing, a defendant must alert the court with specificity to the risk of actual prejudice a joint trial poses to the individual defendant. *See Gallegos*, 2007-NMSC-007, ¶ 19; *see also State v. Lopez*, 2007-NMSC-037, ¶ 16, 142 N.M. 138, 164 P.3d 19 (determining that a defendant properly preserved an objection to a joint trial by notifying the trial court of prejudice by violation of the defendant's confrontation rights); *State v. Walters*, 2007-NMSC-050, 142 N.M. 644, ¶¶ 18-19, 168 P.3d 1068 (same).

**{18}** Together, *Lopez*, 2007-NMSC-037, and *Walters*, 2007-NMSC-050, illustrate codefendants' responsibility and ability to preserve arguments related to a trial court's failure to sever their joint trial. Lopez, Walters, and three other codefendants were tried in a joint trial for an incident involving the gruesome abuse and death of a child. *Walters*, 2007-NMSC-050, ¶ 1. All codefendants made statements during investigations that implicated their fellow codefendants and themselves for the respective charges. *State v. Walters*, 2006-NMCA-071, ¶¶ 6-14, 139 N.M. 705, 137 P.3d 645 *rev'd in part on other grounds*, 2007-NMSC-050, ¶ 1. Walters and Lopez each argued for severance, contending that a joint trial would prejudice them because the admission of their codefendants' statements, which were interlocking confessions, would violate their right to confront the witnesses against them. *See Walters*, 2006-NMCA-071, ¶ 41.

**{19}** After the state moved to join all defendants, Walters opposed the joinder and generally alerted the court to the danger that admitting his codefendants' interlocking confessions would violate his right to confrontation. *Walters*, 2006-NMCA-071, ¶ 17. He asserted that "each of the codefendants 'may give statements that would be inadmissible against the other party and therefore a violation of each defendant's right to cross-examine the witnesses against them.'" *Walters*, 2007-NMSC-050, ¶ 15. Then, Walters joined in Lopez's motion to sever in which Lopez asserted that she would be prejudiced by her codefendants' statements. *Id.* ¶ 18. Lopez argued that Walters and her other codefendants "made admissions of their own abusive or negligent conduct which would be inadmissible against [her] in a separate trial." *Walters*, 2006-NMCA-071, ¶ 16.

**{20}** Walters renewed the motion to sever immediately before trial, and all of the defendants renewed the motion to sever after opening statements, adding to their claims that admitting the statements would violate *United States v. Bruton*.[1] *Id.* ¶ 18. After the trial court denied the motion, both Walters and Lopez continued to object to the admission of statements made by their codefendants based on "hearsay, [the] fifth amendment, and *Bruton*." *Lopez,* 2007-NMSC-037, ¶ 15 (alteration in original) (internal quotation marks and citation omitted); *Walters*, 2007-NMSC-050, ¶ 18 (same).

---

1In *United States v. Bruton*, 391 U.S. 123 (1968), the United States Supreme Court held that under the Sixth Amendment's Confrontation Clause, evidence of a codefendant's confession to a postal inspector that he and the defendant committed aggravated robbery of a post office could not be admitted in a joint trial due to the substantial prejudice a confession would cause to the defendant.

**{21}** On appeal, this Court held that Lopez preserved the issue of prejudice through her motion to sever and her objections that related the Confrontation Clause issues to the trial court. *Lopez,* 2007-NMSC-037, ¶ 16. We held that Walters also preserved the issue of prejudice by filing his statement against joinder, joining Lopez's motion to sever, and making objections "prior to the admission of the statements of his codefendants." *Walters,* 2007-NMSC-050, ¶¶ 18-19. However, while Walters had raised his claim for severance before trial, he did not successfully preserve the issue of prejudice until he made his specific objections at trial. *Id.* ¶ 19. "By including the terms, '*Bruton*' and 'Confrontation Clause' in [the] objections, Defendant effectively put the court on notice of the specific nature of [the] objection and the impropriety of allowing a joint trial where the statements of codefendants would be offered as evidence." *Id.* (internal quotation marks omitted) (quoting *Lopez,* 2007-NMSC-037, ¶ 16).

**{22}** The individualized responsibility to preserve the claim for severance and issue of prejudice protects the interests of each codefendant, as a joint trial may affect each codefendant differently. It ensures that the trial court has notice of specific and possibly different dangers of prejudice that a joint trial may pose to each codefendant. Finally, this requirement to explicitly and unambiguously raise the individualized claim for severance ensures that a defendant who may be advantaged by a joint trial does not implicitly or inadvertently concede to a severed trial.

### 3. Defendant did not preserve a claim for severance and the issue of prejudice

**{23}** Defendant suggests that because Loza successfully invoked the trial court ruling regarding the claim for severance and issue of prejudice that Defendant successfully preserved these issues for appeal. However, Defendant cannot now rely on Loza to preserve his claim that the trials should have been severed.

**{24}** Loza successfully preserved for himself the claim for severance and issue of prejudice by filing a motion for severance that suggested a joint trial would prejudice Loza due to his claimed antagonistic defenses and self-incrimination issues. At the hearing on joinder and severance, Loza repeated these arguments and added that his intent not to testify at trial along with violations of his Sixth Amendment rights at a joint trial would prejudice him. The trial court denied Loza's motion for severance.

**{25}** Defendant, meanwhile, did not preserve the claim for severance or issue of prejudice to support his claim on appeal that the trial court erred when it failed to sever the joint trial. He only opposed his joinder to Loza. Opposing joinder is not sufficient to preserve the claim for severance; a defendant must raise the specific claim for severance and issue of prejudice. For example, Walters successfully preserved his claim for severance because after he opposed the joinder, he also joined Lopez's motion to sever, renewed the motion to sever before trial and after opening arguments, and raised objections at trial including the issue of prejudice under his Sixth Amendment confrontation rights arising from the admission of his codefendants' statements. *Walters,* 2007-NMSC-050, ¶ 18; *Walters,* 2006-NMCA-071, ¶ 17.

**{26}**   Here, however, Defendant did not raise the claim for severance at all. While Loza's motion to sever noted that Defendant "would stipulate" to his motion, Defendant did not actually join the motion to sever or bring his own motion. When responding to Loza's motion to sever, Defendant made no mention of a claim for severance and only stated opposition to the joinder, and at trial, Defendant did not object to the joint trial and the prejudice it might raise.

**{27}**   Defendant also failed to develop facts or arguments establishing an appreciable risk of actual prejudice to him. Even in his arguments against joinder, Defendant did not contend that a joint trial would prejudice him or raise any legal principle to support his arguments. At the hearing on joinder and severance, while Defendant alluded to some possibility of a mistrial, Defendant provided no specific legal principle or facts in support of this contention, and he did not specify what prejudice he might suffer.

**{28}**   Defendant did not invoke a ruling from the trial court related to severance or prejudice. Only Loza preserved the claim for severance by raising legal arguments and facts and invoking a ruling. On appeal, Defendant cannot rely on the fact that Loza preserved a claim for severance when Defendant did not.

**B.      The Trial Court's Decision Not to Sever the Joint Trials Was Not Fundamental Error**

**{29}**   Defendant argues that the trial court's decision not to sever the joint trial was an abuse of discretion. As we have described, Defendant did not preserve any claim for severance. Therefore, we review the trial court's decision not to sever the joint trial for fundamental error, *Barber*, 2004-NMSC-019, ¶ 8, not abuse of discretion.

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand.

*State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297 (quoting *State v. Johnson*, 2010-NMSC-016, ¶ 25, 148 N.M. 50, 229 P.3d 523 (internal quotation marks omitted)).

**{30}**   The trial court did not commit a fundamental error when it decided not to sever the joint trial. The joint trial did not undermine the "foundation" of Defendant's rights or case. *See id.* Neither did the joint trial deprive Defendant of a right that was essential to his defense. *See id.* As far as we can tell, the foundation of Defendant's case at trial was his claim that he was not present at the time Victim was murdered. A joint trial did not deprive him of that defense or any other rights.

**{31}**   Defendant contends on appeal that the decision not to sever the joint trial resulted in severe prejudice to him, although he does not argue that this prejudice constituted a fundamental error.

**{32}** First, Defendant argues that he was prejudiced by the antagonistic defenses presented by him and by Loza in the joint trial. In addition to Defendant's defense that he was not present at the murder, Defendant suggested at trial that Joe, his brother, was the person who wanted Victim dead. Defendant did not dispute that Loza shot Victim. Meanwhile, Loza's defense was that the Chavez family was responsible for Victim's murder and that Joe and Joey had already been convicted for Victim's murder. In his opening argument, Loza suggested that the State could not prove he was involved.

**{33}** Any conflict that did arise from Defendant's and Loza's defenses in the joint trial was not on such a collision course as to warrant a severance had Defendant's claim been preserved. *See Segotta*, 1983-NMCA-054, ¶ 30 ("To warrant a severance . . . the accounts of co-defendants must be 'on a collision course.'" (quoting *United States v. Haldeman*, 559 F.2d 31, 71 (D.C. Cir. 1976) (internal quotation marks omitted))). Certainly, the conflict between the defenses did not undermine the foundation of Defendant's rights, case, or defense under a fundamental error standard. *See Candelaria*, 2019-NMSC-004, ¶ 31.

**{34}** Second, Defendant contests the admission of the recording of a statement Loza made to law enforcement officers during an interview, contending that it resulted in severe prejudice to him. The recorded statement at issue is of an interrogation in which Loza told law enforcement officers, "You want me to tell you that I did this, that I shot [Victim]." At the time of Loza's interview, law enforcement did not know that Victim had been shot. Defendant asserts that "[t]he joint trial and the admission of [Loza's] statement violated [Defendant's] distinct right to confrontation." However, the admission of Loza's statement in the joint trial was not a fundamental error.

**{35}** Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right to confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). It "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Walters*, 2006-NMCA-071, ¶ 32 (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 60 n.9). Statements made to law enforcement during interrogations are testimonial when there is no ongoing emergency and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). When evidence of a statement is nontestimonial or not hearsay, then the court must consider whether the statement would have been admissible in a separate trial under the rules of evidence. *See State v. Gurule*, 2013-NMSC-025, ¶ 40, 303 P.3d 838 (holding that a codefendant's nontestimonial hearsay statement was improperly excluded from a joint trial under both *Crawford* and *Bruton* and noting that the issue of whether the statement could be properly excluded under New Mexico rules of evidence "remain[ed] for the district court to consider on remand"); *Montoya*, 1992-NMCA-067, ¶¶ 7, 9 (holding that nonhearsay statements identifying the defendant as a

drug dealer should not have been admitted in a joint trial due to their negligible probative value and notable prejudicial value).

**{36}** The admission of Loza's statement violated Defendant's Sixth Amendment right to confrontation under *Crawford*. *See Walters*, 2007-NMSC-050, ¶ 24. Loza's statement was clearly testimonial because he gave it during the course of an interrogation with law enforcement officers. The State offered the statement to prove that Loza shot Victim. Defendant did not have the opportunity to cross-examine Loza. However, the violation of Defendant's right to confrontation was not a fundamental error nor did it result in severe prejudice as Defendant contends. Loza's statement was not particularly important to the State's case against Defendant. Instead, it essentially confirmed other evidence that Loza shot Victim and only distantly implicated Defendant.

**{37}** Defendant also misconstrues *United States v. Lemonakis*, 485 F.2d 941 (D.C. Cir. 1973), and *DeLuna v. United States*, 308 F.2d 140 (5th Cir. 1962), to argue that a joint trial resulted in severe prejudice to him due to the fact that he chose to testify at trial but Loza did not. Defendant contends that this violated his right to confrontation. He is incorrect, and the circumstances do not constitute a fundamental error. *Lemonakis* and *DeLuna* relate to the rights of a codefendant who chooses *not* to testify in a joint trial when another codefendant does testify and then comments on the nontestifying defendant's silence as an indication of guilt. *DeLuna*, 308 F.2d at 154-55; *Lemonakis*, 485 F.2d at 951-52. While a codefendant who declines to testify at a joint trial in effect deprives another codefendant of a confrontation *opportunity*, the Sixth Amendment does not provide an accused with opportunity right to confront witnesses who do not testify against the accused and provides no support to Defendant's argument. U.S. Const. amend. VI.

**{38}** Finally, Defendant contends that a lack of limiting instructions to guide the jury on using "separate evidence" (evidence that may have been inadmissible against Defendant in a separate trial) or evaluating the defendants' defenses contributed to the prejudice he faced in the joint trial. However, Defendant did not request limiting instructions. While limiting instructions would have provided useful guidance for the jury in this case, the lack of limiting instructions did not rise to fundamental error. The charges, defenses, and evidence against the two codefendants were not particularly complex such that the jury would have been unable to differentiate between the codefendants' respective culpability. *See Zafiro v. United States*, 506 U.S. 534, 539 (1998) (noting a higher "risk of prejudice" where "many defendants are tried together in a complex case"); *State v. Dominguez*, 1993-NMCA-042, ¶ 29, 115 N.M. 445, 853 P.2d 147 (affirming the varied convictions of five codefendants jointly tried).

**{39}** For the reasons described above, not severing Defendant and Loza's joint trial was not fundamental error. Nor does Defendant present "exceptional circumstances" in which his guilt is so doubtful that allowing his conviction to stand "would shock the judicial conscience." *Candelaria*, 2019-NMSC-004, ¶¶ 31, 38 (internal quotation marks and citation omitted).

## C. Double Jeopardy Arguments

**{40}** Defendant contends that his convictions and sentences for first-degree murder and conspiracy to commit first-degree murder violate protections against double jeopardy. Because Defendant's conduct underlying both convictions and sentences was not unitary, we disagree.

### 1. Standard of review

**{41}** Questions of double jeopardy are questions of law that this Court reviews de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. A party can raise a double jeopardy issue regardless of whether the defendant preserved the issue in the trial court. *State v. Martinez*, 2007-NMCA-160, ¶ 5, 143 N.M. 96, 173 P.3d 18.

### 2. Double jeopardy requires unitary conduct

**{42}** Defendant argues that his convictions for first-degree murder and conspiracy to commit first-degree murder violate double jeopardy because they arose from the same conduct. Defendant contends that his involvement in the murder was that of an accessory whose actions in the course of the murder did not extend beyond the words or acts that formed the conspiracy to commit the murder.

**{43}** Defendant raises a double-description claim "where the same conduct results in multiple convictions under different statutes." *Swick*, 2012-NMSC-018, ¶ 10 (citing *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655). Double jeopardy protects "a criminal defendant 'against multiple punishments for the same offense.'" *Id.* (quoting *State v. Gutierrez*, 2011-NMSC-024, ¶ 49, 150 N.M. 232, 258 P.3d 1024). When this Court considers a double-description claim, we first consider whether the conduct was unitary. *Id.* ¶ 11 (citing *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223 (1991)). To determine whether the conduct was unitary, we consider whether the acts are "sufficiently separated by either time or space." *Swafford*, 1991-NMSC-043, ¶ 28. If a consideration of time or space cannot resolve whether the conduct was unitary, this Court then considers "the quality and nature of the acts or . . . the objects and results involved." *Id.* "[I]f the conduct is separate and distinct, [the] inquiry is at an end," and there is no double jeopardy violation. *Id.* If the conduct is unitary, then we will consider whether the Legislature intended to punish the two crimes separately. *See id.* ¶ 25. If there is unitary conduct and the "Legislature clearly authorized multiple punishments," then "there is no double jeopardy violation." *State v. Torres*, 2018-NMSC-013, ¶ 21, 413 P.3d 467.

**{44}** Defendant's conduct underlying his convictions for first-degree murder and conspiracy to commit first-degree murder was not unitary because the conduct was separated by time and space. *See Swafford*, 1991-NMSC-043, ¶ 28. The quality and nature of the conduct were also distinguishable. *See id.* The jury heard evidence that included audio recordings of the discussions Defendant, Loza, and the others had about killing Victim. The jury also heard testimony about Defendant's active participation in Victim's murder when he arrived at Defendant's house.

**{45}** There was no unitary conduct. In the early morning of October 31, Defendant, Loza, and the others conspired to kill Victim. They drove around all night looking for him, and as they drove they discussed "pop[ping]" Victim. Then they all went to sleep. In the afternoon of October 31, Victim arrived at Defendant's house where the coconspirators already had a plan to kidnap and kill Victim. When Victim tried to escape, Defendant pulled him back into the house. The coconspirators beat Victim. Joey beat Victim with the flashlight Defendant had given him, and Defendant hit Victim with his pistol. Loza shot Victim and killed him. Afterwards, Defendant directed everyone to leave Victim's body. Eventually, they decided to burn Victim's body in the Suzuki. After they drove the Suzuki a few miles away, Defendant handed Joey some matches, and Joey lit the vehicle on fire with Victim's body inside.

**{46}** We note also that "[t]he crimes of conspiracy and accessory to a crime are separate offenses based on separate acts for which the Legislature has intended multiple punishments." *State v. Carrasco*, 1997-NMSC-047, ¶ 36, 124 N.M. 64, 946 P.2d 1075. Defendant acknowledges that these crimes are separate concepts, but he contends that in this case his involvement in the murder as an accessory did not extend beyond the words or acts that formed the conspiracy. As we have described, Defendant's actions in relation to the murder extended beyond the scope of the conspiracy and were separated by time. Additionally, the jury instructions in this case reflected the differences in conduct necessary for the jury to find both first-degree murder, NMSA 1978, § 30-2-1(A) (1994), under accessory liability, NMSA 1978, § 30-1-13 (1972), and conspiracy to commit first-degree murder. *See State v. Baca*, 1997-NMSC-059, ¶ 50, 124 N.M. 333, 950 P.2d 776. Specifically, the jury instructions brought the jury's attention to the agreement between Defendant and his coconspirators to commit first-degree murder.

### 3. A fifteen-year sentence is the proper basic sentence for a second-degree felony that resulted in the death of a human being

**{47}** Defendant also argues that his fifteen-year sentence for conspiracy to commit first-degree murder violates double jeopardy and is an unconstitutional sentencing enhancement based on Victim's death. Essentially, Defendant argues that he was punished twice for Victim's death: once under his sentence for first-degree murder, and once under his sentence for conspiracy to commit first-degree murder, which was a second-degree felony that resulted in the death of a human being.

**{48}** Double jeopardy in double-description cases protects defendants from being punished twice for unitary conduct. *See Swafford*, 1991-NMSC-043, ¶ 26. As we described above, Defendant's conduct underlying his first-degree murder and conspiracy to commit first-degree murder convictions was not unitary. There were clearly two instances of criminal conduct, and Defendant's respective sentences were based on those separate instances of criminal conduct. Defendant was sentenced to life imprisonment for first-degree murder. Defendant's sentence for conspiracy to commit first-degree murder was fifteen years. The sentence for conspiracy reflects "only the factual consequence" of Defendant's criminal conduct within the conspiracy. *State v. McDonald*, 2004-NMSC-033, ¶ 18, 136 N.M. 417, 99 P.3d 667.

**{49}** The fact that his sentence for conspiracy to commit first-degree murder took into account the factual consequence of the conduct—Victim's death—was not an unconstitutional enhancement but rather the appropriate basic sentence for a second-degree felony that resulted in the death of a human being. *Id.* ¶ 7; *State v. Franco*, 2016-NMCA-074, ¶ 18, 387 P.3d 279. Conspiracy to commit first-degree murder is a second-degree felony. NMSA 1978, § 30-28-2(B)(1) (1979). The basic sentence for a second-degree felony under NMSA 1978, Section 31-18-15(A)(7) (2019) is a nine-year term of imprisonment. The basic sentence for a second-degree felony resulting in the death of a human being is a fifteen-year term of imprisonment. Section 31-18-15(A)(4). This more severe punishment reflects the Legislature's intent to authorize harsher punishment for felonies that result in death than those that do not. *McDonald*, 2004-NMSC-033, ¶ 7.

**{50}** Alternatively to his argument that his fifteen-year sentence for conspiracy violates double jeopardy, Defendant urges this Court to hold that a second-degree conspiracy conviction cannot receive a fifteen-year sentence as a matter of statutory construction.

**{51}** When a defendant is convicted of conspiracy to commit first-degree murder, the court will sentence the defendant according to Sections 31-18-15(A)(4) and (A)(7), which differentiate sentences based on result, as described above. *Compare* § 31-18-15(A)(4) (providing the basic sentence for second-degree felonies that result in death), *with* § 31-18-15(A)(7) (providing the basic sentence for second-degree felonies that do not result in death). *Franco* and its predecessor, *State v. Shije*, clearly establish that a fifteen-year term of imprisonment is an appropriate sentence under the sentencing statute for a second-degree conspiracy that results in the death of a human being. *Franco*, 2016-NMCA-074, ¶ 21; *State v. Shije*, 1998-NMCA-102, ¶ 10, 125 N.M. 581, 964 P.2d 142. Defendant's argument would require this Court to overrule this precedent.

**{52}** When considering whether to overrule precedent, this Court determines whether one of the following "convincingly demonstrates that a past decision is wrong":

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 7, 133 N.M. 661, 68 P.3d 901) (internal quotations marks and citation omitted).

**{53}** To support his argument that the Court should depart from precedent Defendant asserts "the precedent is so unworkable as to be intolerable." He provides no explanation as to what is unworkable or what is intolerable; he simply contends that *Franco* was wrongly decided and must be overturned before courts impose more basic

sentences such as what Defendant now faces for his conspiracy to commit first-degree murder. He notes that because *Franco* was decided in 2016, reversing *Franco* would not cause undue hardship because it is unlikely that many parties have relied on it. Finally, Defendant contends that the third and fourth factors do not apply.

**{54}** Defendant's arguments do not compel us to abandon *Franco*'s precedent, and we decline to do so.

**{55}** Thus, we conclude that Defendant's convictions and sentences do not violate protections against double jeopardy.

### D.   There Is Sufficient Evidence to Support Defendant's Conviction of Arson

**{56}** Arson includes the malicious or willful burning or causing of an explosion "with the purpose of destroying or damaging" the property of another. NMSA 1978, § 30-17-5 (2006). Defendant contends that the State did not provide sufficient evidence that he burned the property of another or that the burning was malicious to support his arson conviction. Defendant argues that the Suzuki in which they burned Victim's body belonged to Joe, who gave consent to burn the vehicle such that Defendant did not burn the vehicle of another maliciously.

### 1.   Standard of review

**{57}** The Court reviews a sufficiency of the evidence claim in the light most favorable to the verdict. *State v. Storey*, 2018-NMCA-009, ¶ 45, 410 P.3d 256. The Court determines "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

### 2.   There is sufficient evidence to support the jury's finding

**{58}** There is sufficient evidence to support the jury's conclusion that the Suzuki did not belong to Joe. The jury heard testimony from Tracy and Joey in which both witnesses referred to the Suzuki as Priscilla's or Victim's vehicle—not Joe's vehicle. This is sufficient to support the jury's conclusion that the vehicle did not belong to Joe, consistent with Section 30-17-5(A)(1).

**{59}** There is also sufficient evidence to support the jury's conclusion that Defendant burned the Suzuki maliciously or willfully, consistent with Section 30-17-5(A). The trial court instructed the jury to consider whether Defendant burned the car maliciously or intentionally. The jury heard extensive evidence that Defendant intended to burn the vehicle. Joe's consent is irrelevant to whether Defendant burned the vehicle intentionally. Therefore, a rational jury would be justified in concluding that Defendant intentionally or willfully burned the Suzuki.

## IV.   CONCLUSION

**{60}** For the foregoing reasons, we affirm Defendant's convictions.

**{61}** IT IS SO ORDERED.

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**