This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41397**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**STACEY APRIL SPENCER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Louis E. DePauli, Jr., District Court Judge**

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** After a jury trial, Defendant Stacey Spencer was convicted of two counts of vehicular homicide, contrary to NMSA 1978, Section 66-8-101 (2016). On appeal, Defendant contends that (1) the district court's comments during voir dire had a chilling effect on juror participation that resulted in fundamental error; (2) the admission of the investigating sergeant's testimony as lay opinion testimony was plain error; (3) the district court abused its discretion by admitting the State's witness as an expert in forensic toxicology; and (4) Defendant was sentenced incorrectly in light of the

Legislature's 2022 amendment to the general sentencing statute, NMSA 1978, Section 31-18-15(A) (2022, amended 2024). We are not persuaded by Defendant's arguments and therefore affirm.

**DISCUSSION**

**I.    The District Court's Comments During Voir Dire Did Not Amount to Fundamental Error**

**{2}**    Defendant argues that her Sixth Amendment right to a fair and impartial jury was violated by the district court because it "discourag[ed] juror participation in voir dire, precluding both attorney inquiry and the informed exercise of excusals and strikes." Defendant contends that throughout voir dire, "[t]he district court abdicated its role of ensuring a fair and impartial jury, instead delegating its and the attorneys' role of inquiry to the potential jurors themselves" by asking jurors to self-identify whether their potential biases would impact their ability to be fair and impartial. Reviewing Defendant's unpreserved claim for fundamental error,[1] *see* Rule 12-321(B)(2)(c) NMRA, we are not persuaded that error occurred here.

**{3}**    Under fundamental error review, we first "determine whether error occurred." *State v. Romero*, 2023-NMSC-014, ¶ 6, 533 P.3d 735 (text only) (citation omitted). "If an error has occurred, we proceed to the second step, asking whether the error is fundamental." *Id.* (text only) (citation omitted). In reviewing Defendant's claim, we remain mindful that "[t]rial courts . . . are given broad discretion in overseeing the voir dire process." *State v. Martinez*, 2002-NMCA-036, ¶ 31, 131 N.M. 746, 42 P.3d 851.

**{4}**    Defendant argues that the judge chilled participation in voir dire by instructing jurors to only raise their placard if they knew any of the individuals involved in the trial *and* if that relationship would cause them to be biased.[2] Importantly, the judge instructed

---

[1]Defendant also asks us to review this issue for structural error, citing out-of-state authority involving structural error and jury selection. The cited cases, however, are distinguishable because they involve violations of state statutes, but Defendant does not contend that any statute was violated in her case. We therefore remain focused on New Mexico case law, under which structural error is defined as "a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Nguyen*, 2008-NMCA-073, ¶ 9, 144 N.M. 197, 185 P.3d 368 (text only) (citation omitted). "Structural error exists only in a very limited class of cases, . . . includ[ing] such pervasive defects as racial discrimination in the selection of a grand jury, complete denial of the right to counsel, a significant defect in the reasonable-doubt instruction, and denial of the right to a public trial." *State v. Rivera*, 2012-NMSC-003, ¶ 20, 268 P.3d 40 (text only) (citations omitted). Defendant has not persuaded us that errors of this nature occurred in this case.

[2]Defendant also argues that the judge "pushed back on jurors who expressed financial or transportation hardship" and "appeared fatigued by jurors who said they had critical medical appointments or their medical conditions would impact service." We understand Defendant's argument to be that these comments generally discouraged other jurors from participating in the jury selection process, which impacted Defendant's right to a fair trial. Defendant relies on one concurring opinion from an out-of-state case dealing with juror bias; Defendant cites no authority that would support a conclusion that the comments made by the judge here regarding potential hardships are reversible error. *See State v. Smith*, 2019-NMCA-027, ¶ 9, 458 P.3d 613 (assuming no authority exists when a party on appeal "points to no

jurors that if they believed a relationship would "impact [them] in *any* way," they should raise their sign. Defendant essentially argues that the district court and the parties were unable to identify potential biases because the jurors were told to raise their hands only if they themselves thought they might be biased. However, even if the judge's statements did discourage jurors from raising their hands during the judge's questioning, Defendant fails to acknowledge that the district court never prevented defense counsel from inquiring about biases during the attorney-led portion of voir dire and that defense counsel had the opportunity to re-ask about bias—and did so—with no interference by the judge. *Cf. State v. Sosa*, 1997-NMSC-032, ¶¶ 14-15, 123 N.M. 564, 943 P.2d 1017 (reasoning that although the district court prohibited voir dire about specific facts, the court did not abuse its discretion because defense counsel "was provided ample opportunity to question potential jurors about their biases and prejudices"), *abrogated on other grounds by State v. Porter*, 2020-NMSC-020, 476 P.3d 1201. Because the district court had broad discretion to control the voir dire proceedings, *see Martinez*, 2002-NMCA-036, ¶ 31, and defense counsel had ample opportunity to ask questions regarding bias, we are not persuaded that any error occurred.

## II.  Defendant Has Not Established That the Admission of Sergeant Lee's Testimony Was Plain Error

**{5}**     Defendant argues that Sergeant Johnson Lee, one of the investigating officers, provided testimony regarding the cause of the crash and the speed of Defendant's vehicle, and that this constituted expert testimony in accident reconstruction. Defendant contends that the admission of these statements was plain error because the sergeant was not qualified as an expert under Rule 11-702 NMRA. The State argues that Sergeant Lee's statements were lay opinions based on his personal observations at the scene of the crash and were admissible under Rule 11-701 NMRA. Even assuming that some of Sergeant Lee's statements included expert opinions, we conclude that the admission of his testimony did not amount to plain error.

**{6}**     Because Defendant did not object to the sergeant's testimony at trial, we review for plain error. *See* Rule 11-103(E) NMRA ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."). "The plain error rule is to be used sparingly as an exception to a preservation rule designed to encourage efficiency and fairness." *State v. Garcia*, 2019-NMCA-056, ¶ 10, 450 P.3d 418. "In determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (text only) (citation omitted). To find plain error, we must be convinced that admission of the testimony was an injustice that created "grave doubts concerning the validity of the verdict." *Id.*

**{7}**     As we understand Defendant's arguments on appeal, she challenges two conclusions offered by Sergeant Lee. First, the sergeant concluded that Defendant was

---

. . . authority supporting" an argument). The argument made by Defendant does not persuade us that the judge's comments require reversal.

speeding. He testified that "[Defendant's] car was moving at a high rate of speed," which he determined based on hearsay statements from fellow officers who had spoken to eyewitnesses who had "observ[ed] the vehicle traveling at higher speeds than normal." The sergeant also concluded that Defendant was speeding based on "skid marks" found at the scene. He went on to describe skid marks as "the marks of the tire on the roadway, whether you hit your brakes or if it leaves the roadway at not the normal, straight way, . . . it's go[ing] to cause a skid mark from the tires—those black lines you see on the roadway that are the exact length of the tire . . . width." Second, based on that same information—hearsay from other deputies and skid marks on the roadway—Sergeant Lee testified as to the cause of the crash. The sergeant concluded that "[Defendant's car] was at fault of the crash"; that her "black passenger car was moving at a high rate of speed and collided with the white Trailblazer, pushing it off of the roadway."

**{8}** Because the district court did not determine that Sergeant Lee was qualified as an expert witness, our inquiry in determining whether error occurred would be whether the conclusions he made were lay opinions or whether they were inadmissible expert opinions. Pursuant to Rule 11-701, lay opinion testimony is that which is (1) "rationally based on the witness's perception," (2) relevant, and (3) "not based on scientific, technical, or other specialized knowledge." Lay opinions are generally within the "common knowledge and experience of an average person." *State v. Winters*, 2015-NMCA-050, ¶ 11, 349 P.3d 524 (text only) (citation omitted). When differentiating between lay and expert opinion, this Court has noted that:

> The testimony of law enforcement officers presents a particular challenge to courts given that an officer's personal perception of events is often informed by technical or other specialized knowledge obtained through the officer's professional experience. The training and daily interactions undertaken by law enforcement officers are not part of the common knowledge and experience of an average person. However, law enforcement officers regularly make observations in the course of their professional duties, such as the speed of an automobile, that are proper lay opinion testimony.

*State v. Vargas*, 2016-NMCA-038, ¶ 16, 368 P.3d 1232 (text only) (citation omitted). However, it is unnecessary for us to grapple with any such challenges in this case. We need not decide—and do not decide—whether parts of his testimony were expert opinions because, even if they were, their admission did not amount to plain error for two reasons.

**{9}** First, the testimony at issue was cumulative. *See State v. Montoya*, 2015-NMSC-010, ¶ 49, 345 P.3d 1056 (holding that there was no plain error as there was "ample evidence" supporting a guilty verdict). Multiple eyewitnesses testified regarding the excessive speed of Defendant's car and one witness, Mr. Nathan Yazzie, testified to the cause of the crash. Mr. Yazzie stated that he saw "a black Ford"—Defendant's car—pass him on the highway at a "high rate of speed, . . . los[e] control, [and] hit an SUV."

Looking at the testimony as a whole, *see Dylan J.*, 2009-NMCA-027, ¶ 15, we are not persuaded that there was plain error. Instead, the admission of the sergeant's testimony was cumulative evidence of the cause of the crash and the speed of Defendant's car. *See Montoya*, 2015-NMSC-010, ¶ 49; *State v. Lopez*, 2018-NMCA-002, ¶¶ 34-35, 410 P.3d 226 (holding that the admission of "cumulative evidence that corroborated the testimony" of other witnesses was not "sufficient to establish plain error").

**{10}**     Second, the State relied exclusively on the cumulative eyewitness testimony in its closing argument. The State did not rely on Sergeant Lee's testimony to support its theory of the case. *Cf. State v. Chavez*, 2024-NMSC-023, ¶¶ 37-38, 562 P.3d 521 (holding that there was plain error where the state relied on prejudicial evidence in opening statement and closing argument).

**{11}**     For these reasons, Defendant has not persuaded us that the admission of the sergeant's testimony raises "grave doubts about the validity of the verdict" or that his "substantial rights" were affected. *Dylan J.*, 2009-NMCA-027, ¶ 15 (text only) (citations omitted). We therefore decline to reverse Defendant's conviction based on the admission of his testimony.

### III.     Defendant Has Not Established That the District Court Abused its Discretion by Qualifying Marina Salazar as an Expert

**{12}**     Defendant argues that Marina Salazar from the Scientific Laboratory Division was not qualified to provide expert testimony about the results of Defendant's blood alcohol content test results.[3] The State contends that the witness's qualifications sufficed to qualify her an expert in forensic toxicology, and that the district court did not abuse its discretion by admitting her as an expert. Defendant has not persuaded us that the district court abused its discretion.

**{13}**     "[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court." *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. Therefore, we review the admission of expert testimony for an abuse of that discretion. *Id.* "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{14}**     When reviewing the admission of expert testimony, we consider the three requirements from Rule 11-702: (1) the expert must be qualified, (2) the expert testimony must assist the trier of fact, and (3) the expert may only testify as to their

---

[3]Defendant also refers to the Confrontation Clause in passing, asserting that "Ms. Salazar did not reach her own opinion" with regard to the test results and that she simply "parroted" the original analyst's report. Defendant acknowledges that she did not preserve the issue, but Defendant does not argue that we should review the issue pursuant to any of the exceptions to the preservation rule. *See* Rule 12-321(B). We therefore decline to review it further. *See State v. Candelaria*, 2019-NMSC-004, ¶ 46, 434 P.3d 297.

"scientific, technical or other specialized knowledge." *Alberico*, 1993-NMSC-047, ¶¶ 43-45. Defendant argues that the first prong was not met because Ms. Salazar was not qualified to testify about the results of Defendant's blood alcohol test. In order for an expert witness to be qualified, it must be shown that the "witness has acquired sufficient knowledge, skill, training, or experience that such testimony will aid the fact finder." *State v. Downey*, 2008-NMSC-061, ¶ 26, 145 N.M. 232, 195 P.3d 1244 (text only) (citation omitted). However, "no set criteria can be laid down to test such qualifications." *Id.* (text only) (citation omitted). "The use of the disjunctive 'or' in Rule 11-702 permits a witness to be qualified under a wide variety of bases, 'knowledge, skill, experience, training, or education,' and underscores that broad discretion intentionally is given to the trial court to determine whether expert testimony will assist the trier of fact." *Id.* (citation omitted).

**{15}** We understand Defendant's argument to be that Ms. Salazar was unqualified because of her description of the scientific process used by the gas chromatography machine, which Defendant contends "lacked any scientific explanation." However, Ms. Salazar did provide the court with a description of how the machine works:

> It is performed by dual column capillary headspace chromatogram with [flame ionization detection]. It is an instrument that we use to perform testing so that the blood is aliquoted and the gas from that blood that is gaseous vapor . . . is injected into an instrument and it is determined, based on the alcohol content, what the actual value is.

While Defendant finds this explanation lacking, the district court found it adequate and allowed Ms. Salazar to testify as an expert witness. The district court's satisfaction with Ms. Salazar's explanation of the gas chromatography process is not untenable or contrary to logic. *See Rojo*, 1999-NMSC-001, ¶ 41.

**{16}** Defendant also takes issue with the district court's reliance on Ms. Salazar's certification from the state as proof of her qualifications to testify regarding the results of the blood analysis. In its oral ruling, the court stated that

> it appears that the witness is qualified by the State of New Mexico to run these analyzing machines to determine an amount of chemical inside someone's blood or urine, as the case may be. And she's been doing this for four years. And she's again qualified to do that by the state through her degree. She talked about the machine, . . . how it's tested, how it's calibrated for accuracy.

Defendant argues that by relying on the witness's certification from the state, "the district court delegated its gatekeeping function to [the Scientific Laboratory Division's] hiring process." Although the court did refer to the state's certification of the witness, it did not rely exclusively on that fact. The court also cited her explanation of how the machine worked and the amount of time she had been a forensic analyst. Before the court's ruling, Ms. Salazar had also testified during direct examination that she had

annual training in blood alcohol analysis, had been qualified to operate different testing machines, had done thousands of technical reviews, and had testified as a forensic toxicology expert at least five times. Defendant has not established that these qualifications fell short, considering the broad discretion entrusted to district courts, and the various alternative bases for qualifying an expert. *See Downey*, 2008-NMSC-061, ¶ 26.

**{17}** We are not persuaded that the district court's decision to qualify Ms. Salazar as an expert was against logic or reason, *see Alberico*, 1993-NMSC-047, ¶ 63, and we therefore decline to conclude that the court abused its discretion.

## IV.     Defendant Has Not Established That a Sentencing Error Occurred

**{18}** Defendant argues that her sentence is unlawful because the offense she was convicted of carries a shorter basic sentence than the basic sentence used by the district court. Specifically, Defendant argues that homicide by vehicle is a second-degree felony with a basic sentence of nine years, rather than a "second[-]degree felony resulting in the death of a human being" with a basic sentence of fifteen years. *See* Section 31-18-15(A) (2022). This Court has repeatedly rejected this argument, as we will explain, but Defendant contends that the 2022 amendment to the general sentencing statute's introductory language reflects the Legislature's desire to indicate that its intent has always been for the statute to apply to a more limited set of offenses. Unpersuaded, we affirm her sentence.

**{19}** Reviewing this question of statutory interpretation de novo, *State v. Lucero*, 2007-NMSC-041, ¶ 8, 142 N.M. 102, 163 P.3d 489, we look first to the plain language of the statute to attempt to discern the Legislature's intent, *see State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. "When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation." *Id.* Pursuant to Section 31-18-15(A), a second-degree felony carries a basic sentence of nine years imprisonment and a "second[-]degree felony resulting in the death of a human being" carries a basic sentence of fifteen years. This Court has consistently held that the relevant inquiry regarding applicability of the nine-year or fifteen-year sentence is whether the underlying facts of the crime resulted in the death of a human being. *See State v. Shije*, 1998-NMCA-102, ¶ 6, 125 N.M. 581, 964 P.2d 142 ("The express language of Section 31-18-15(A)(2) requires only that the second[-]degree felony . . . result in the death of a human being."); *State v. Franco*, 2016-NMCA-074, ¶ 21, 387 P.3d 279 (concluding that the Legislature intended the fifteen year basic sentence to apply "to *all* second degree felonies resulting in deaths").

**{20}** Defendant asks us to overturn this precedent based on a 2022 amendment to the introductory language of Section 31-18-15. *Compare* § 31-18-15(A) (2019) ("If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows . . . ."), *with* § 31-18-15 (2022) ("As used in a statute that establishes a noncapital felony, the following defined felony classifications and associated basic sentences of imprisonment are as follows . . . ."). However, as the State notes and Defendant

concedes, the incident in the present case took place before the effective date of the 2022 amendment. Therefore, the version of the statute that was in effect before the 2022 amendment is applicable to Defendant's case. *See Lucero*, 2007-NMSC-041, ¶ 14 ("We have held that the law, at the time of the commission of the offense, is controlling.") (text only) (citation omitted). Defendant, however, suggests that "there is reason to believe" that the cases interpreting the applicable version of the statute "were wrongly decided." Defendant has not adequately developed an argument as to why we should overturn binding precedent because she has not analyzed the stare decisis factors. *See State v. Pieri*, 2009-NMSC-019, ¶ 21, 146 N.M. 155, 207 P.3d 1132 (outlining issues that must be considered before overturning prior case law); *see also State v. Chavez*, 2021-NMSC-017, ¶¶ 50-54, 485 P.3d 1279 (refusing to overturn *Shije-Franco* line of cases for failure to develop stare decisis argument). We will not develop Defendant's argument for her. *See Candelaria*, 2019-NMSC-004, ¶ 46, 434 P.3d 297.

**CONCLUSION**

**{21}**   We affirm.

**{22}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**