The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 29, 2022

**No. A-1-CA-39180**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FERMIN MORENO-ORTIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Carrie Cochran, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1} Defendant Fermin Moreno-Ortiz appeals his conviction for one count of criminal sexual penetration (CSP) in the third degree, contrary to NMSA 1978, Section 30-9-11(F) (2009). Defendant challenges the sufficiency of the evidence supporting his conviction and argues that a witness's statement offered by the prosecution that Defendant is "savage and tries to hook up with all the girls" is inadmissible character evidence requiring reversal.

{2} We conclude that sufficient evidence in the record supports Defendant's conviction, and that, although the witness's statement was character evidence which was inadmissible under Rule 11-404(A)(1) NMRA, Defendant did not object. Because its admission was not plain error requiring reversal, we affirm Defendant's conviction.

**BACKGROUND**

{3} The charges in this case arose when Victim attended a party in a house Defendant shared with friends. Victim was acquainted with Defendant, but testified that she had no interest in dating him. Carlos Nagdi, a young man whom Victim was attracted to and with whom she had once before had a sexual encounter, was also in attendance. Everyone at the party was drinking. Both Nagdi and Victim testified that

they had quite a lot to drink that night. Nagdi estimated that he had more than twenty drinks.

{4} At one point, Victim was feeling "really drunk" and moved into the den to sleep it off. Nagdi followed her and they began making out. Nagdi and Victim agreed that this conduct was consensual. Victim testified that she "blacked out" and the next thing she remembers was waking up in Defendant's bedroom. She testified that when she "came to," Nagdi was in front of her with his penis in her mouth, and Defendant was behind her, penetrating her vaginally. Victim testified that she consented to sex with Nagdi but not with Defendant. Victim reported the incident to police early the following morning.

{5} Nagdi was called to the stand by the prosecution. He testified that he had consensual sex with Victim in Defendant's bedroom. He claimed Victim was interactive and engaged the entire time. He admitted, however, that he was so drunk at the time he could not remember parts of the sexual encounter.

{6} Nagdi was interviewed at the police station the morning after the party. The interview was not offered or admitted into evidence at trial. Nagdi, however, was asked by the prosecution on direct examination whether during the police interview he had made the statement that "[Defendant] is savage and tries to hook up with all the girls." Nagdi denied making that statement. Later the prosecutor questioned Detective Guerrero, one of the officers who interviewed Nagdi, about whether Nagdi

had made the statement during his interview at the police station. Detective Guerrero contradicted Nagdi, testifying that she recalled Nagdi making that statement. Defendant did not object to this testimony.

{7} Defendant was found guilty of third degree criminal sexual penetration (force or coercion). On appeal, Defendant argues (1) the evidence is insufficient to support his conviction; and (2) the admission of Nagdi's statement that "[Defendant] is savage and tries to hook up with all the girls" requires reversal.

**DISCUSSION**

**I.    Sufficient Evidence in the Record Supports Defendant's Conviction**

{8} Defendant argues that his conviction is not supported by sufficient evidence in the record. Specifically, Defendant claims that the State failed to prove that Victim was unconscious, asleep or physically helpless when Defendant had sex with her and that even if Victim was unconscious, asleep or physically helpless, Defendant knew or had reason to know of her condition. Defendant points to Nagdi's testimony that Victim was responsive while he was having sex with her and claims that the term "blacked out," which was used by the Victim, is ambiguous and can refer to being unconscious or instead to being unable to remember, while behaving normally.

{9} The State argues that the Victim's use of the terms "blacked out" and "came to" generally refers to being unconscious or physically helpless, and that the inference drawn by the jury that Defendant knew or should have known about

3

Victim's condition was reasonable. We agree with the State and conclude that the evidence was sufficient to support the jury's verdict.

{10} In reviewing the sufficiency of the evidence, we begin by viewing "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). We then consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Holt*, 2016-NMSC-011, ¶ 20 (alterations, internal quotation marks, and citation omitted).

{11} In this case, the jury was instructed that to find Defendant guilty of criminal sexual penetration by force or coercion, they must find the following elements of the crime beyond a reasonable doubt: "(1) [D]efendant caused [Victim] to engage in sexual intercourse or anal intercourse; (2) [Victim] was unconscious, asleep or

physically helpless AND [D]efendant knew or had reason to know of the condition of [Victim]; (3) This happened in New Mexico on or about April 21-22, 2016." *See* UJI 14-944 NMRA.

{12}   Defendant admitted to engaging in sexual intercourse with Victim, establishing the first element of the offense. Defendant argues that the second element—that Victim was unconscious, asleep or physically helpless—was not established by the evidence. This element requires the jury to assess Victim's condition at the time of the incident. Victim testified that she "blacked out" and did not remember anything that happened from the time she started making out with Nagdi in the den until she "came to" in Defendant's bedroom to find Nagdi and Defendant having sex with her.

{13}   In addition to Victim's testimony, the State called an expert witness, a toxicologist, to testify about blood test results showing the amount of alcohol and other substances Victim had in her body that night and the effect of those substances on Victim at the time of the incident. The toxicologist estimated that Victim's blood alcohol content would have been at least 0.125 g/100mL approximately five hours earlier when the incident at issue took place, well above the 0.08 g/100 mL presumptive intoxication limit for driving a car. *See* NMSA 1978, § 66-8-102(C)(1) (2016). The toxicologist also testified that Victim had taken a seizure medication

that, when combined with alcohol, can cause excessive sleeping, confusion, and difficulties with memory or speaking.

**{14}** While Defendant concedes that this testimony was sufficient to prove that Victim "blacked out," he argues that being "blacked out" does not necessarily mean that she was "unconscious, asleep or physically helpless," as required by the jury instruction, or that her appearance and conduct would necessarily put others on notice that she was unable to consent. Defendant relies on Nagdi's testimony that Victim was awake and interacting with him for the entire sexual encounter. Nagdi, however, also admitted that he did not recall long periods from that night, including some of the time he was having sex with Victim, because he had at least twenty drinks that night.

**{15}** Resolving all disputed facts in favor of the State and indulging all reasonable inferences in support of the verdict, as we must, *see Holt*, 2016-NMSC-011, ¶ 20, we conclude that the evidence is sufficient to support the jury's conclusion that Victim was "unconscious, asleep or physically helpless," and that Defendant knew or had reason to know of Victim's condition. It was the duty of the jury to weigh the evidence and to decide how to resolve the contradictions in Nagdi's testimony. *See Romero v. H. A. Lott, Inc.*, 1962-NMSC-037, ¶ 11, 70 N.M. 40, 369 P.2d 777 ("Mere inconsistencies or perhaps contradictions in the testimony of a witness only affect his credibility and it is the duty of the trier of the facts to weigh the evidence,

determine the credibility of the witness and the weight to be given the testimony, and, where the truth lies."). Whether Victim was "unconscious, asleep or physically helpless," and whether her condition was or should have been visible to Defendant are questions of fact for the jury to decide based on all the evidence. The fact that Victim's statement that she "blacked out" was ambiguous and could have been interpreted in a manner that might support acquittal, does not mean that the evidence was insufficient to support the decision made by the jury. *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). There is sufficient evidence in the record to support the jury's verdict.

**II.    Although Nagdi's Statement Was Inadmissible Character Evidence Offered to Show Propensity, Its Admission Did Not Amount to Plain Error Requiring Reversal**

{16}    Defendant next argues that Nagdi's statement to the police that "[Defendant] is savage and tries to hook up with all the girls" was inadmissible evidence of bad character and that its admission requires reversal and remand for a new trial. The State denies both that the statement was inadmissible, and, even if it was inadmissible, that its admission was sufficiently prejudicial to require reversal. We agree that the statement's admission does not require reversal under the doctrine of plain error.

7

## A. Standard of review

{17}     The parties disagree about the proper standard of review on appeal. The State claims that Defendant failed to object to either of the two instances where the prosecution relied on the statement at trial. In the absence of an objection, the State contends that this Court should review for fundamental error. Although Defendant admits he made no objection to the prosecution's second use of the statement in questioning Detective Guerrero, he claims he objected to the original question to Nagdi and argues that our review, therefore, should be for reversible error.

{18}     Our review of the transcript shows that defense counsel did not object either to the prosecution's original question to Nagdi about whether he made this statement in his police interview or to the prosecution's subsequent questioning of Officer Guerrero impeaching Nagdi's denial. When a timely objection has not been made, we review the admission of evidence for plain error.[1] *See State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071 (stating that plain error applies to evidentiary matters that were not brought to the attention of the district court); *see also* Rule 11-103(E) NMRA ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."). To reverse

---

[1]Defendant objected later to a different question, which Defendant claimed had been asked and answered previously. No objection was made to the prosecution's question about whether he recalled "telling Detective Guerrero that [Defendant] is savage and tries to hook up with all the girls."

a conviction based on plain error, the reviewing court must be convinced that the testimony was admitted in error and that its admission affected the "substantial right[s]" of the accused. Rule 11-103(E). "[T]he Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted).

**B.     The Statement Was Improper Character Evidence Under Rule 11-404(A)(1)**

{19}     We look first at whether the challenged statement was admitted in error. In this case, the jury heard the statement twice: first when Nagdi was questioned by the prosecutor, and again when the prosecution impeached Nagdi's denial that he had made the statement with Detective Guerrero's contrary testimony. Defendant claims that the statement that he "is savage and tries to hook up with all the girls" is evidence of bad character, and that it was offered by the prosecution for the sole purpose of showing that Defendant acted in conformance with his character by committing the crime charged.

{20}     Rule 11-404(A)(1) is designed to prohibit admission of negative character traits to prove that a defendant acted in accordance with those traits. *State v. Lucero*, 1992-NMCA-107, ¶ 9, 114 N.M. 489, 840 P.2d 1255. In a criminal case, the prosecution is not permitted to introduce negative character evidence if its sole aim is proving the accused's propensity to commit the crime charged. *See id.*

9

("Testimony which amounts to evidence of a defendant's bad character or disposition to commit the crime charged is clearly inadmissible."). Such evidence is disallowed, not because character evidence lacks relevance, but because, although relevant, it has a substantial prejudicial effect. *State v. Martinez*, 2008-NMSC-060, ¶ 23, 145 N.M. 220, 195 P.3d 1232; *see also State v. Rackley*, 2000-NMCA-027, ¶ 12, 128 N.M. 761, 998 P.2d 1212 ("Evidentiary rules restricting the use of propensity evidence reflect a judgment that the probative value of such evidence is outweighed by unfair prejudice, confusion and waste of time.").

{21}    Although the State generally denies that it questioned Nagdi about the statement to suggest that Defendant had a propensity to act consistently with Nagdi's negative description of his character, the State offers no legitimate purpose for admitting this statement of bad character. The State fails to articulate any permissible consequential fact it was attempting to prove with Nagdi's statement. *See State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828 (holding that a permissible purpose must be articulated).

{22}    Although articulating no permissible purpose justifying admission of the statement, the State claims that its questioning of Detective Guerrero was justified to impeach Nagdi and undermine his credibility. This Court in *Lucero*, however, rejected as improper the state's successful attempt in that case to introduce inadmissible evidence of prior misconduct by claiming it was impeachment of the

defendant's denial that misconduct had occurred. 1992-NMCA-107, ¶ 14. *Lucero* noted that allowing impeachment using otherwise inadmissible evidence of bad character "permitted the [s]tate to introduce a collateral, irrelevant, and potentially prejudicial issue into the case." *See id.*; *see also State v. Ross*, 1975-NMCA-056, ¶¶ 6-9, 88 N.M. 1, 536 P.2d 265 (disallowing impeachment with testimony about bad character because it would have been inadmissible under Rule 11-404 on direct examination).

{23}     We hold, therefore, that the challenged statement was inadmissible evidence of bad character, which had no purpose other than showing that Defendant acted consistently with his bad character, committing the crime charged. Such a statement was inadmissible, both when offered on direct examination and when used to impeach Nagdi's denial that he made the statement.

**C.     Admission of the Statement Does Not Amount to Plain Error**

{24}     Having held that Nagdi's statement was inadmissible character evidence, we now turn to the second prong of the plain error analysis: whether the admission of the evidence creates "grave doubts concerning the validity of the verdict" or the fairness of the trial. *See Montoya*, 2015-NMSC-010, ¶ 46. "Plain error is an exception to the general rule that parties must raise timely objection to improprieties at trial, and therefore it is to be used sparingly." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted).

{25}     In this case, we conclude that the plain error doctrine does not demand reversal. Defendant's conviction turned primarily on whether Victim was too impaired to consent to have sex and whether the extent of her impairment should have been obvious to Defendant. The statement that "[Defendant] is savage and tries to hook up with all the girls" suggests only that Defendant looks for an opportunity to have sex, not that he has forcible sex or sex with nonconsenting people. Defendant did not deny seeking and having sex with Victim; the questions for the jury focused on Victim's level of intoxication and consciousness and on whether her inability to consent would have been apparent to a reasonable person. We, therefore, conclude that the admission of this statement did not create substantial prejudice to Defendant concerning either the validity of the verdict or the fairness of the trial required to constitute plain error.

**CONCLUSION**

{26}     For the reasons stated, we affirm Defendant's conviction.

{27}     **IT IS SO ORDERED.**


_____

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Chief Judge**

_____
**GERALD E. BACA, Judge**

13