This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39499**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**REDWOLF POPE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary Marlowe Sommer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Erica Schiff, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison, Hart & Davis, LLC
Nicholas T. Hart
Daniel J. Gallegos
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}** Defendant Redwolf Pope was convicted by a jury for one count of third-degree criminal sexual penetration (CSP), contrary to NMSA 1978, Section 30-9-11(A), (F) (2009), and one count of voyeurism, contrary to NMSA 1978, Section 30-9-20(A) (2007). Defendant appeals, and we affirm.

**{2}**     We develop the facts as they become necessary to our analysis.

**DISCUSSION**

**{3}**     On appeal, Defendant raises three issues: (1) the district court's denial of his motion to change venue was an abuse of discretion; (2) the evidence failed to support his two convictions; and (3) his convictions violate double jeopardy protections. We begin with the change of venue ruling.

**I.     Any Error by the District Court in Denying the Change of Venue Motion Is Moot**

**{4}**     More than two years before trial, an article was published in a local newspaper providing details of the allegations against Defendant at issue in this case, as well as accusations regarding additional women. The day before trial, another article was published that described the allegations and the anticipated evidence, and included information about plea negotiations that the State had included in public pleadings. Defendant filed a motion to change venue, which the district court denied. On appeal, Defendant argues that under NMSA 1978, Section 38-3-3(B) (2003), "[a] change of venue was mandatory, and that, therefore, the failure to grant the motion was an abuse of discretion." Although we agree that a change of venue is mandatory absent a hearing, *see State v. Astorga*, 2015-NMSC-007, ¶ 68, 343 P.3d 1245, we disagree that reversal is required under the circumstances.

**{5}**     Under Section 38-3-3(B), "[i]n a case in which there have been no preceding changes of venue, this right to a venue change is generally mandatory and must be granted by the trial court, provided that the moving party has filed an affidavit as prescribed by" the statute. *State v. House*, 1999-NMSC-014, ¶ 29, 127 N.M. 151, 978 P.2d 967;[1] *State v. Shawan*, 1967-NMSC-013, ¶ 6, 77 N.M. 354, 423 P.2d 39 (concluding "that the denial of the appellant's motion for a change of venue, without a hearing, supported by the exhibit attached thereto, was an abuse of discretion requiring a reversal"); *State v. Montoya*, 1968-NMCA-069, ¶ 26, 80 N.M. 64, 451 P.2d 557 (acknowledging that "if the court had not required evidence, [the] appellant would have been entitled to a change of venue as a matter of law"). Defendant argues that the district court (1) was required to grant the motion for a change of venue because this was his first such motion, and he filed the required affidavit; and (2) improperly denied the motion despite the State's failure to contest the evidence submitted by Defendant's affidavit. As we have noted, when venue has not been previously changed and the motion is accompanied by the required affidavits, the district court may grant the motion or require an evidentiary hearing, *see House*, 1999-NMSC-014, ¶ 29 (explaining that a change in venue is "generally mandatory" in cases with no prior change of venue and "provided that the moving party has filed an affidavit as prescribed by" Section 38-3-3(B), but that the court may also require an evidentiary hearing), or defer ruling until after voir dire, *see State v. Gutierrez*, 2011-NMSC-024, ¶ 47, 150 N.M. 232, 258 P.3d

---

[1]*House* refers to Section 38-3-3(A)(2), *see* 1999-NMSC-014, ¶ 29, but the statute was amended in 2003, and we therefore refer to the current version, Section 38-3-3(B).

1024. The district court, however, did not defer ruling and denied the motion without reference to an evidentiary hearing.

**{6}** Nevertheless, we need not determine whether the district court's denial of the motion to change venue is reversible error. The district court's ruling on the issue was rendered moot by the seating of an unbiased jury. *See State v. Romero*, 2019-NMSC-007, ¶ 17, 435 P.3d 1231. In *Romero*, the district court granted the motion to change venue but selected a venue different than those requested in the defendant's motion. *See id.* ¶ 7. After voir dire, the defendant renewed the motion to change venue, and the district court again denied the motion. *See id.* ¶ 8. On appeal, the defendant argued that the district incorrectly decided the initial motion to change venue. *Id.* ¶ 9. The *Romero* Court concluded that it

> need not decide the merit of the [district] court's initial decision to move the venue to [a county other than the one the defendant requested]. As we have discussed, an unbiased jury was actually selected and seated, rendering this issue moot. Actual prejudice, not presumed prejudice, is the standard by which we review the [district] court's decision in this case. The parties and the [district] court made sufficient inquiry during voir dire into the actual prejudice of the jurors. The jurors selected did not exhibit actual prejudice. The [district] court acted within its discretion to deny the renewed motion to change venue. [The d]efendant's argument therefore fails.

*Id.* ¶ 17 (citation omitted). Unlike the present case, *Romero* did not involve a motion to change venue that was denied without a hearing. *See id.* ¶ 7. Both proceedings, however, resulted in the seating of an unbiased jury. *See id.* ¶ 14. Defendant makes no contention that the jury seated in his case was biased, and our review of the record reveals no bias. To the extent Defendant argues that because the change in venue was mandatory, this Court should not consider prejudice at all, we disagree. In this case, Defendant had the benefit of an unbiased jury. Our review of the record confirms that the district court excused for cause three jurors who had been exposed to the pretrial media about which Defendant was concerned. Two additional jurors—who had been exposed to the media, but who had expressed that they could be fair—were also excused from the jury. We therefore conclude that the seating of an unbiased jury under the circumstances of this case rendered Defendant's challenge to the district court's denial of the motion moot because "the jurors selected did not exhibit actual prejudice." *See id.*

## II.     The Evidence Supported Defendant's Convictions

**{7}** Defendant next maintains that sufficient evidence supported neither of the convictions and both relied on speculation and conjecture. We review the sufficiency of the evidence "in the light most favorable to the prosecution" and consider whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Moreno-Ortiz*, 2022-NMCA-059, ¶ 10, 517 P.3d 959

(internal quotation marks and citation omitted), *cert. denied* (No. S-1-SC-39499). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Id.* (internal quotation marks and citation omitted). We therefore turn to the elements set forth in the instructions received by the jury, beginning with the CSP charge.

**{8}** The jury was instructed as follows on CSP:

For you to find [D]efendant guilty of [CSP] as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

      1.     [D]efendant caused [Victim] to engage in sexual intercourse;

      2.     [Victim] was unconscious, asleep, or physically helpless;

      3.     [D]efendant knew or had reason to know of the condition of [Victim;]

      4.     [D]efendant's act was unlawful;

      5.     This happened in New Mexico on or about the 20[th] day of August 2017.

*See* UJI 14-943 NMRA. Defendant challenges the evidence supporting elements one and two because a video clip played for the jury did not show the face of the male person, and Defendant was linked to the video only by the red ribbons the person in the video wore in their hair and by Victim's testimony that she was with Defendant when Victim blacked out. Having reviewed the evidence presented at trial in the light most favorable to the verdict, we conclude that the evidence was sufficient to support the verdict. *Moreno-Ortiz*, 2022-NMCA-059, ¶ 10.

**{9}** The video clip played for the jury showed a male with red ribbons in his hair having sexual intercourse with a female, identified as Victim. An acquaintance of Defendant's (Witness) testified that she saw the video on an iPad that was located in the apartment where Defendant stayed. Witness accessed the contents of the iPad after retrieving the password for the iPad from Defendant. Witness identified Defendant as the male in the images she saw on the iPad. Victim testified that Defendant wore red ribbons in his hair on the night in question, the next morning, and every other time Victim had seen him. Regarding the night in question, Victim testified that Defendant offered to give her a ride to a friend's home, she got into the car with Defendant, he gave her an open drink, Victim took a sip, and the next thing Victim remembered was waking up in a hotel room with Defendant in the room with her. Victim additionally testified that in a lengthy text message nearly a year after the incident, Defendant admitted to having sex with her and taking pictures of her that night, but Defendant claimed that Victim consented. From this evidence a rational juror could have concluded that Defendant had sexual intercourse with Victim and that she was "unconscious,

asleep, [or] physically or mentally helpless" during the encounter. *See* UJI 14-943; *Moreno-Ortiz*, 2022-NMCA-059, ¶ 15 (concluding that whether a victim is "unconscious, asleep or physically helpless" and whether that condition "was or should have been visible to [the d]efendant are questions of fact for the jury to decide based on all the evidence" (internal quotation marks omitted)).

**{10}** In relation to the voyeurism charge, the jury was instructed as follows:

For you to find [D]efendant guilty of Voyeurism as charged in Count 3, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.      [D]efendant used an instrumentality to view, photograph, videotape, film, webcast or record the intimate areas of [Victim].

2.      [Victim] did not know or consent to the recording of her intimate parts.

3.      While unconscious, incapacitated or asleep in the hotel room, [Victim] had a reasonable expectation of privacy.

*See* § 30-9-20(A).[2] Defendant contends that this conviction was not supported because the State failed to prove the second and third listed items. Defendant maintains that neither the video, nor Victim's "unbelievable testimony," demonstrated that Victim was "asleep, incapacitated, or unconscious or that she did not consent to being filmed." The jury viewed the video recording, as well as the photographs. Neither the video nor the photographs are in the record, but the descriptive testimony at trial supports the jury's verdict.

**{11}** As we have noted, Witness testified that the pictures and video were located on an iPad found at Defendant's apartment and were accessed using Defendant's password. Victim's final memory before waking up in the hotel room in Defendant's presence was being in a car with Defendant. The investigating detective testified that the video clip depicted a woman (Victim) who made no physical response during sexual intercourse—no "facial expressions" or "movements of any kind." Victim identified herself in photographs in which she is shown with her clothes in disarray. Victim stated that she was passed out and that she had no idea how she got into the physical position she was shown to be in the photographs or how her clothes came undone. Victim

2We observe that Section 30-9-20(A) does not include the language in item three of the instruction given to the jury, that Victim was "unconscious, incapacitated or asleep." The parties do not challenge the instruction on appeal, and we do not consider its correctness. In reviewing the sufficiency of the evidence, we consider whether the evidence supported the verdict as the jury was instructed. *See State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (reviewing a sufficiency of the evidence claim "under the erroneous instruction provided to the jury at trial"). *But see State v. Carpenter*, 2016-NMCA-058, ¶ 14, 374 P.3d 744 (noting that reviewing courts consider "only the legal question whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (internal quotation marks and citation omitted)).

testified that she did not consent to Defendant removing her dress or her nylons, or to Defendant positioning her as she appeared in the photographs. From this, a reasonable juror could conclude that Defendant was guilty of voyeurism. *See* § 30-9-20(A). Accordingly the evidence was sufficient to support the verdict.

## III.      The Convictions Did Not Violate Double Jeopardy

**{12}**      Defendant contends that his convictions for CSP and voyeurism violate the protection against double jeopardy, because he maintains that he was punished under multiple statutes for the same conduct. Our double jeopardy analysis first evaluates, as a mixed question of law and fact, whether the conduct was unitary—"whether the same conduct violates both statutes." *State v. Armijo*, 2005-NMCA-010, ¶ 15, 136 N.M. 723, 104 P.3d 1114 (internal quotation marks and citation omitted). In this case, we assume but do not decide that the conduct was unitary, *see State v. Bahney*, 2012-NMCA-039, ¶ 21, 274 P.3d 134, and proceed directly to the second part of the analysis, in which we ask a legal question, "whether the Legislature intended to impose multiple punishments for the unitary conduct" in separate statutes. *Id.* ¶ 20 (internal quotation marks and citation omitted). Where the statutes in question do not "clearly prescribe multiple punishments," we look to "whether each provision requires proof the other does not." *State v. Swick*, 2012-NMSC-018, ¶¶ 11-12, 279 P.3d 747 (internal quotation marks and citation omitted). If the statutes are vague and unspecific and a strict comparison of the elements renders unreliable a conclusion about legislative intent, our analysis of the proof required to establish the elements of the crimes is informed by the State's legal theory, including charging documents, jury instructions, evidence at trial, and arguments to the jury. *State v. Begaye*, 2023-NMSC-015, ¶¶ 23-24, 533 P.3d 1057 (describing a "modified *Blockburger*" approach, named for *Blockburger v. United States*, 284 U.S. 299 (1932)). As the voyeurism and CSP statutes do not clearly prescribe multiple punishments, we turn to the language of the statutes.

**{13}**      Voyeurism involves

using the unaided eye to view or intentionally using an instrumentality to view, photograph, videotape, film, webcast or record the intimate areas of another person without the knowledge and consent of that person:

(1)      while the person is in the interior of a bedroom, bathroom, changing room, fitting room, dressing room or tanning booth or the interior of any other area in which the person has a reasonable expectation of privacy; or

(2)      under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

Section 30-9-20(A). The CSP statute prohibits "the unlawful and intentional causing of a person to engage in sexual intercourse" in a variety of manners "to any extent and with any object," and third-degree CSP punishes "all criminal sexual penetration perpetrated

through the use of force or coercion not otherwise specified in this section." Section 30-9-11(A), (F). These statutes are vague and unspecific because they can be violated in multiple ways, and we must therefore continue our analysis to evaluate the State's theory of how the statutes were violated. *See Begaye*, 2023-NMSC-015, ¶ 24.

**{14}** Defendant maintains that the State blended the two crimes by arguing that Defendant committed voyeurism by intentionally using a camera to record Victim's intimate areas while he was engaged in CSP and at trial repeatedly connected the images to the CSP. Under the modified *Blockburger* analysis, we look to whether each crime, under the State's theory of the case, has an element that the other does not. *See State v. Serrato*, 2021-NMCA-027, ¶ 16, 493 P.3d 383 (comparing the elements not "in the abstract" but in the context of "the legal theory of the offense that is charged" (internal quotation marks and citation omitted)), *cited with approval in Begaye*, 2023-NMSC-015, ¶¶ 31-32, 35. In this case, based on the charging documents and jury instructions, the State's theory of voyeurism required the State to prove that Defendant intentionally used a device to record or photograph an intimate area of Victim's body. The State's theory for the CSP charge required proof of penetration, not exposing and recording Victim's intimate parts. The video evidence at trial further established that the offenses did not overlap. *See Begaye*, 2023-NMSC-015, ¶ 22 (describing the modified *Blockburger* test to consider whether "the statute as applied by the [s]tate in a given case, overlaps with other criminal statutes so that the accused is being punished twice for the same offense" (emphasis, internal quotation marks, and citation omitted)).

**{15}** Two offenses completely overlap and violate double jeopardy when the state "direct[s] the jury to the *same act . . .* as the basis to convict for both crimes." *Id.* ¶ 29 (emphasis added) (internal quotation marks and citation omitted). In *Begaye*, the state used evidence of the same act—that the defendant broke a window—to establish both an unauthorized entry for the crime of burglary and the breaking of a window and entry without permission elements of the crime of breaking and entering. *Id.* ¶ 35. In the present case, the video evidence depicted the *act* of CSP—as the State argued in closing, "the penetration" of Victim by "the person with the red ribbons who admitted to having done it a year later." The videos and other images—as well as Defendant's text message to Victim nearly a year later admitting to recording and photographing Victim's intimate areas—also established that Defendant committed the *act* of using an instrumentality to view or record Victim's intimate areas, a criminal act independent of sexual penetration. Thus the State did not rely upon the same conduct, under the same theory, to support both charges. *Cf. Serrato*, 2021-NMCA-027, ¶¶ 19-20 (concluding by examining the state's closing argument that the state's theory for two charges "was based upon the same conduct and under the same theory" and violated double jeopardy). As a result, we conclude that the Legislature intended to permit punishment for each of Defendant's convictions.

**CONCLUSION**

**{16}** For these reasons, we affirm.

**{17}** IT IS SO ORDERED.

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**JANE B. YOHALEM, Judge**