This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40155

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAMES D. LUJAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Kathleen McGarry Ellenwood, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Bowles Law Firm
Jason Bowles
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant James Lujan appeals his convictions for one count of intimidation of a witness, contrary to NMSA 1978, Section 30-24-3(A)(3) (1997), and one count of harboring a felon, contrary to NMSA 1978, Section 30-22-4 (1963), following a jury trial in Santa Fe County. Defendant contends that his convictions should be reversed because the district court erred in (1) changing the trial venue from Rio Arriba County to Santa Fe County, (2) limiting Defendant's cross-examination of two witnesses, and (3)

failing to replace an allegedly sleeping juror. Defendant also asserts that his convictions were not supported by sufficient evidence. For the reasons set forth below, we affirm.

**DISCUSSION**

**I.      Change of Venue**

**{2}**      Defendant argues that the district court erred in granting the State's motion for a change of venue. Defendant was first tried for witness intimidation and harboring a felon in Rio Arriba County. This trial ended in a hung jury and the district court declared a mistrial. The State then moved to transfer the venue of Defendant's second trial, arguing that it could not obtain a fair trial in Rio Arriba County because, Defendant was an elected official and had an undue influence over the community; extensive media coverage of the underlying offenses and the trial biased the community and the jury pool; and the county courthouse was unsuitable for the size of the trial required due to Defendant's status in the community under the COVID-19-related restrictions in place at the time. Defendant opposed the motion and sought an evidentiary hearing, asserting that the trial in Rio Arriba County had been fair and impartial. Following a hearing, the district court granted the State's motion and transferred venue to Santa Fe County.

**{3}**      When the State moves to transfer venue from the venue to which the defendant is constitutionally entitled, we review the district court's determination of venue for an abuse of discretion. *See State v. House*, 1999-NMSC-014, ¶ 29, 127 N.M. 151, 978 P.2d 967 ("[U]pon the need for an evidentiary hearing, this first change of venue ceases to be mandatory and is left to the court's discretion."). "The standard of review required in assessing most abuse[ ]of[ ]discretion claims is whether the [district] court's venue determination is supported by substantial evidence in the record." *Id.* ¶ 32. "Substantial evidence consists of relevant evidence that might be accepted by a reasonable mind as adequate to support a conclusion." *State v. Barrera*, 2001-NMSC-014, ¶ 12, 130 N.M. 227, 22 P.3d 1177. "We will not substitute our own judgment for a determination of the [district] court that is supported by substantial evidence in the record." *House*, 1999-NMSC-014, ¶ 33.

**{4}**      Here, Defendant specifically argues that the district court erred when it granted the State's motion to change venue without first holding an evidentiary hearing. Additionally, Defendant asserts that he was prejudiced by the change of venue because it impacted the composition of the jury. We address each issue in turn.

**A.      Evidentiary Hearing**

**{5}**      Decisions regarding the venue of a criminal trial are guided by the defendant's constitutional guarantee of a trial before "an impartial jury of the county or district in which the offense is alleged to have been committed." N.M. Const. art. II, §§ 14, 18. However, both the state and defendants have a statutory right to a fair trial under our venue statute. *See House*, 1999-NMSC-014, ¶ 28 ("[B]oth sides are equally entitled to a fair trial under the venue statute."); *see* NMSA 1978, § 38-3-3 (2003) (allowing a change

in venue when the litigant cannot obtain a fair trial in which the case is brought). Thus, both the defendant and the state may seek a change of venue, "though a criminal defendant's statutory right to a fair trial is guided by [their] constitutional right to an impartial jury in the county in which the crime allegedly occurred." *House*, 1999-NMSC-014, ¶ 28.

**{6}** A party may move for a change of venue by filing an affidavit alleging that it cannot receive a fair trial in the present county because

(1) the adverse party has undue influence over the minds of the inhabitants of the county;

(2) the inhabitants of the county are prejudiced against the party;

(3) of public excitement or local prejudice in the county in regard to the case or the questions involved in the case, an impartial jury cannot be obtained in the county to try the case; or

(4) of any other cause stated in the affidavit.

Section 38-3-3(B). However, when the state, against the defendant's objections, moves to transfer a case from the venue to which the defendant is constitutionally entitled, it bears the burden of demonstrating "why the defendant's *constitutional* right should be overridden." *House*, 1999-NMSC-014, ¶ 42 (emphasis added). Thus, the state must prove by clear and convincing evidence at a hearing governed by NMSA 1978, Section 38-3-5 (1929) that it cannot receive its statutory right to a fair trial in the original county. *House*, 1999-NMSC-014, ¶ 43. To meet the requirements of a hearing under Section 38-3-5, this Court has held that "[t]he [district] court must receive evidence upon which it can make findings of fact." *Lewis v. Samson*, 1999-NMCA-145, ¶ 64, 128 N.M. 269, 992 P.2d 282, *rev'd on other grounds by* 2001-NMSC-035, ¶¶ 1, 5, 45, 131 N.M. 317, 35 P.3d 972.

**{7}** In this case, Defendant asserts that the district court abused its discretion when it did not hold the requisite evidentiary hearing before granting the State's motion to change venue. We disagree. In *State v. Salas*, our Supreme Court stated that a party could produce "affidavits . . . media articles, or . . . juror questionnaires" in addition to testimony to support a motion to change venue. 2010-NMSC-028, ¶ 19, 148 N.M. 313, 236 P.3d 32. Moreover, in *Lewis*, this Court stated that "affidavits of . . . counsel [and a] jury consultant constituted sufficient evidence on which to base a ruling" on a motion to change venue. 1999-NMCA-145, ¶ 66.

**{8}** In this case, the district court held a hearing on the motion in August 2021. The State presented its own affidavit in addition to affidavits from investigators who spoke to jurors from the first trial, affidavits from media professionals who reported on the trial and underlying offenses, and numerous media articles about the trial as evidence

supporting its request for a change of venue. This evidence was sufficient on which to base a ruling and conclude that the State had proved by clear and convincing evidence that it could not receive a fair trial in Rio Arriba County. Defendant does not assert that the district court erred in not considering certain evidence proffered by Defendant, nor does he indicate any piece of evidence he intended to introduce. Thus, we conclude that Defendant has not met his burden to demonstrate that the district court abused its discretion. *See House*, 1999-NMSC-014, ¶ 31 ("The burden of establishing an abuse of discretion is borne by the party that opposes the [district] court's venue decision."). Because Defendant does not otherwise argue that the State failed to meet its burden to prove that it could not obtain a fair trial in Rio Arriba County, we conclude that the district court's hearing on the State's motion to change venue was sufficient.

## B.      Claim of Prejudice Due to Jury Composition

**{9}**      Defendant next argues that the district court erred in granting the State's motion to change venue because he was prejudiced by the makeup of the jury within the new trial venue. An "important factor that would prove abuse of discretion in a venue determination is a showing by the complainant that [they] ha[d] been prejudiced by the [district] court's decision." *Id.* ¶ 34. "Substantial evidence that a trial in a particular venue was not fair and impartial would require reversal on appeal." *Id.* However, we decline to address this issue as it is unpreserved.

**{10}**      "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the [district] court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted); *see* Rule 12-321(A) NMRA. Defendant did not argue in his response to the State's motion to change venue, nor did he argue at the hearing on said motion, that a change of venue would deprive him of a jury of his peers or that the State's motion to change venue was founded on discriminatory intent. Thus, this issue is unpreserved. Because Defendant has not asked us to review this claim for fundamental error, we do not address the matter further. *See State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050 ("[G]enerally, [we] will [not] address issues not preserved below and raised for the first time on appeal."); *State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (stating that courts normally do not review for fundamental or plain error when not requested by the appellant); *see also State v. Pacheco*, 2007-NMSC-009, ¶ 10, 141 N.M. 340, 155 P.3d 745 (explaining that fundamental rights "may be waived or lost" and concluding that the defendant waived his right to argue his fundamental right to a trial by a fair and impartial jury by "failing to timely invoke the ruling of the trial court"). Therefore, we affirm the district court's grant of the State's motion for change of venue.

## II.      Limitation on Cross-Examination

**{11}**      Next, we address Defendant's contention that the district court erred in limiting his cross-examination of two witnesses, former Rio Arriba Sheriff's Deputy Lattin and Española Chief of Police Jimenez. Relying on the right to confrontation, Defendant

asserts that he should have been permitted to cross-examine these witnesses regarding their allegedly improper motivations to testify against Defendant. "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Lopez*, 2013-NMSC-047, ¶ 7, 314 P.3d 236 (internal quotation marks and citation omitted).

**{12}** At trial, defense counsel cross-examined Deputy Lattin about a letter written by Chief Jimenez on Deputy Lattin's behalf generally praising his conduct. On redirect examination, the State asked Deputy Lattin if it was "common" for heads of law enforcement agencies to "write letters on behalf of officers when they do a good job." Outside the presence of the jury, defense counsel argued that the State's question on redirect misled the jury about the reason the letter was written. The district court ruled that Defendant could question Chief Jimenez about the letter, the reason it was written at that time, and the conditions under which it was written. Back before the jury, Chief Jimenez testified that he wrote the letter in relation to a misconduct investigation that had been pending against Deputy Lattin.

**{13}** Defendant's argument on appeal is unclear. Defendant generally claims he should have been able to elicit testimony from which jurors could conclude that "the true purpose of the [letter] was to get [Deputy] Lattin out of trouble in his disciplinary proceeding in exchange for his . . . testimony." Defendant does not cite to any specific ruling by the district court that limited his ability to elicit such testimony, nor does Defendant indicate what testimony he was not permitted to elicit on cross-examination. Moreover, contrary to Defendant's arguments, the district court did allow Defendant to elicit Chief Jimenez's reasons for writing the letter. Additionally, Defendant spent several minutes of his closing argument emphasizing that Deputy Lattin fabricated his testimony against Defendant in return for Chief Jimenez's letter. We will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be." *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181. Therefore, we decline to consider this issue further.

### III.    Juror Substitution

**{14}** Third, Defendant argues that he was prejudiced by the district court's failure to replace a juror who allegedly fell asleep during trial. We review the district court's decision not to replace a juror for an abuse of discretion. *State v. Pettigrew*, 1993-NMCA-095, ¶ 15, 116 N.M. 135, 860 P.2d 777 ("It is . . . within the discretion of the [district] court to replace seated jurors who, prior to the time the jury retires to consider its verdicts, become or are found to be unable or disqualified to perform their duties with alternate jurors." (internal quotation marks and citation omitted)). However, we decline to substantively address this issue as Defendant failed to preserve it for appellate review.

**{15}** "In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors." *State v. Chavez*, 2021-NMSC-017, ¶ 16, 485 P.3d

1279 (internal quotation marks and citation omitted). "This in turn requires assertion of the legal principle and development of the facts." *State v. Adame*, 2020-NMSC-015, ¶ 13, 476 P.3d 872 (alteration, internal quotation marks, and citation omitted).

**{16}** In this case, Defendant never requested that the district court replace the allegedly sleeping juror. In fact, the court proposed to "keep an eye" on the juror and replace her if necessary, to which Defendant agreed. The court eventually dismissed the alternate jurors without any objection. Defendant cannot complain on appeal that the district court failed to replace a sleeping juror when Defendant himself acquiesced to the court's handling of the situation and failed to object further. *See State v. Lopez*, 1986-NMCA-094, ¶ 40, 105 N.M. 538, 734 P.2d 778 ("Defendants cannot complain on appeal of claimed errors which were not objected to below."). As Defendant failed to preserve this issue for our review and he has not asked us to review this claim for fundamental error, we decline to address the issue further. *See Druktenis*, 2004-NMCA-032, ¶ 122.

## IV.     Substantial Evidence

**{17}** Lastly, Defendant contends that there was insufficient evidence to support his convictions for witness intimidation and harboring a felon. We review the sufficiency of the evidence "in the light most favorable to the prosecution" and consider whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Moreno-Ortiz*, 2022-NMCA-059, ¶ 10, 517 P.3d 959 (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Id.* (internal quotation marks and citation omitted). We therefore turn to the elements set forth in the instructions received by the jury.

### A.     Witness Intimidation

**{18}** First, we address Defendant's conviction for witness intimidation. The jury was instructed that, to find Defendant guilty of witness intimidation, it must first find that "[D]efendant knowingly intimidated or threatened [Deputy] Lattin with the intent to keep [Deputy] Lattin from truthfully reporting to a law enforcement officer or any other agency that is responsible for enforcing criminal laws information relating to the commission or possible commission of [a]ggravated [f]leeing a [l]aw [e]nforcement [o]fficer."

**{19}** On appeal, Defendant argues that the jury was not adequately instructed that it had to find that Defendant "knowingly intimidated or threatened the witness." However, Defendant's argument is unclear. The jury was clearly instructed on the "knowing" element—it was specifically instructed that it must find that "[D]efendant knowingly intimidated or threatened [Deputy] Lattin . . . ." Appellate courts are under no obligation to review unclear or undeveloped arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031. As Defendant has failed to make a cognizable argument, we decline to address this issue further.

### B.     Harboring a Felon

**{20}**     We next turn to Defendant's conviction for harboring a felon. The jury was instructed that, to find Defendant guilty of harboring a felon, it must conclude the following:

1.     Phillip Chacon committed the crime of aggravated fleeing a law enforcement officer;

2.     [Defendant] knew that Phillip Chacon had committed the crime of aggravated fleeing a law [e]nforcement officer;

3.     [D]efendant concealed or gave aid to Phillip Chacon, with the intent that Phillip Chacon escape, avoid arrest, trial, conviction or punishment for the crime of aggravated fleeing a law enforcement officer;

4.     This happened in New Mexico on or about March 14, 2017.

Additionally, the jury was instructed that it must find the following elements of aggravated fleeing beyond a reasonable doubt:

1.     Phillip Chacon operated a motor vehicle;

2.     Phillip Chacon drove willfully and carelessly in a manner that endangered the life of another person;

3.     Phillip Chacon had been given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle;

4.     Phillip Chacon knew that a law enforcement officer had given him an audible or visual signal to stop;

5.     This happened in New Mexico on or about March 14, 2017.

Defendant argues that the jury lacked substantial evidence to conclude (1) Chacon was the driver of the truck involved in the law enforcement pursuit; (2) Chacon drove in a willful and careless manner that endangered the life of another; and (3) Defendant knew that Chacon had committed the felony of aggravated fleeing when he served the temporary restraining order on Chacon.[1] We disagree.

---

[1]Defendant also makes a cursory argument that the jury was not properly instructed on the elements of aggravated fleeing or on the "knowing" element of the charge of harboring a fugitive. As with Defendant's argument regarding the insufficiency of the instructions given for the charge of witness intimidation, Defendant's argument is unclear. The jury was instructed on the elements of aggravated fleeing and it was instructed that, to find Defendant guilty of harboring a felon, it must find that Defendant knew that Chacon had committed the felony of aggravated fleeing. Thus, we decline to address these issues. *See Guerra*, 2012-NMSC-014, ¶ 21.

**{21}** First, the State produced ample circumstantial evidence to show that Chacon was the driver of the truck. Defendant claims that "[t]he only evidence the State introduced at trial as to the driver's identity was that afterward, someone claiming to be Chacon called into dispatch claiming to have been unlawfully chased by [Española Police Department (EPD)]."[2] An officer who was engaged in the law enforcement pursuit at issue did testify that, following the pursuit, someone claiming to be Phillip Chacon called into dispatch and stated that he had been unlawfully chased by EPD. In addition to this testimony, an EPD officer testified that the pursuit began after the truck drove into the EPD parking lot and pulled up behind a parked vehicle that belonged to one of Chacon's family members. Chacon was supposed to pick up the vehicle. Additionally, Deputy Lattin testified that, on the night of the pursuit, Chacon and Defendant discussed the pursuit by EPD, and Chacon specifically discussed how he outran the police. Moreover, a dispatch officer testified that Defendant called into dispatch early in the morning following the pursuit and sought the phone number that Phillip Chacon called from the night before. A logical inference from this evidence is that Chacon was the driver of the truck. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176; *see also State v. Santillanes,* 1970-NMCA-003, ¶ 9, 81 N.M. 185, 464 P.2d 915 (noting that the identity of the perpetrator of a crime can be established by circumstantial evidence); *City of Raton v. Cowan*, 1960-NMSC-120, ¶ 10, 67 N.M. 463, 357 P.2d 52 (noting that, although the defendant denied being the driver of a vehicle involved in a collision, there was sufficient circumstantial evidence to establish his identity). Thus, viewing all evidence in the light most favorable to the State, and disregarding contrary evidence and inferences, we conclude that there was sufficient evidence to support the jury's determination that Chacon was the driver of the truck.

**{22}** Second, there was substantial evidence that Chacon drove willfully and carelessly, endangering the lives of others. "[A] defendant is guilty of aggravated fleeing if [they] fled police by driving in a way that threatened the lives of people in the community." *State v. Vest*, 2021-NMSC-020, ¶ 19, 488 P.3d 626. The statute "does not require that an identifiable person was actually endangered as a result of the defendant's flight from law enforcement." *Id.* [3] "When reviewing sufficiency of the evidence in an aggravating fleeing case . . . the focus is on whether a defendant drove so dangerously that he could have hurt someone who could have been in the vicinity of the pursuit." *Id.* ¶ 39.

**{23}** In *Vest*, our Supreme Court held that there was sufficient evidence to convict the defendant of aggravated fleeing when he "put people in the community at risk of harm" by "spe[eding] at seventy miles per hour on town roads, . . . refus[ing] to slow down

---

[2]Defendant also asserts that "[n]o one witnessed Chacon operating the motor vehicle that was the subject of that night's earlier pursuit and the [o]fficers testified that the vehicle was registered to a woman." However, when conducting a review for substantial evidence, this Court disregards all evidence and inferences that support a result different from the delivered verdict. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Therefore, we will not consider this evidence.

[3]Defendant cites to *State v. Vest*, 2018-NMCA-060, 428 P.3d 287, for the proposition that, to be convicted of aggravated fleeing, the defendant must have actually endangered the public. *Vest* was reversed in 2021. *See Vest*, 2021-NMSC-020, ¶ 12 ("We . . . reverse the Court of Appeals' interpretation of the statute as requiring actual endangerment.").

while passing an apartment complex, and . . . dr[iving] onto a sidewalk and crash[ing] into a road sign." *Id.* ¶ 40. In this case, viewing the evidence in favor of the guilty verdict, a rational juror could have found that Chacon committed aggravated fleeing when he put people in the community at risk of harm by speeding at, at least, 50-to-60 miles per hour in a busy 35 mile-per-hour zone, running through intersections, and forcing cars off the road after police officers turned on their lights and sirens. Therefore, we conclude that there was sufficient evidence to support the jury's determination that Chacon willfully drove in a way that endangered the lives of others.

**{24}** Third, the State presented sufficient evidence that Defendant knew that Chacon had committed the felony of aggravated fleeing. Defendant asserts that the State only presented evidence that Defendant knew there had been a pursuit, "which could have resulted in misdemeanor or felony charges." However, the State demonstrated that Defendant knew that Chacon had called 911 on the night of the pursuit because Defendant called dispatch the day after the pursuit and asked for the number that Chacon had called from. Additionally, Deputy Lattin testified that Defendant and Chacon talked about the pursuit, and Chacon admitted to Defendant that he was involved. Deputy Lattin further testified that he told Defendant that there had been a high speed pursuit. A member of the 911 board also testified that Defendant stated in a letter to her that, on March 14, 2017, he was advised of a high-speed pursuit of more than 110 miles per hour. Defendant also discussed this pursuit with Deputy Lattin on the night of the pursuit. Moreover, there was testimony that an average officer would know that a high-speed pursuit would constitute aggravated fleeing, a felony offense. Thus, there was substantial evidence for the jury to conclude that a felony had been committed and that Defendant knew the pursuit constituted a felony.

**{25}** For these reasons, we conclude that substantial evidence supports Defendant's convictions.

**CONCLUSION**

**{26}** For the foregoing reasons, we affirm Defendant's convictions for witness intimidation and for harboring a felon.

**{27}   IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**